UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARTIN J. WALSH**, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>**DAYEMI ORGANIZATION, INC. d/b/a LONGBRANCH CAFÉ AND BAKERY**, an Illinois corporation, and **ELAINE RAMSEYER GREENBERG**, an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.: 3:21-cv-00056-SMY<br>)<br>) CJRA Track: B<br>)<br>) Presumptive Trial Month: July 2022<br>)<br>)<br>) Judge Staci M. Yandle<br>)<br>) |

**SECRETARY OF LABOR'S RESPONSES TO DEFENDANTS' MOTIONS IN LIMINE**

Pursuant to the Court's Case Management Procedures, Plaintiff Martin J. Walsh, Secretary of Labor, U.S. Department of Labor ("Secretary") submits his responses to *Defendants' Motions in Limine* [ECF No. 42].

1. **Response to Defendants' Motion in Limine ("MIL") on Settlement Discussion Evidence**

The Secretary has not and does not intend to introduce evidence of settlement discussions between the parties to the extent that such evidence would be used to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction" pursuant to Federal Rule Evidence 408(a). However, to the extent evidence of settlement discussions become needed for permissible rebuttal or impeachment purpose under Rule 408(b), the Secretary objects to Defendants' request to exclude settlement discussion evidence. Fed. R. Evid. 408(b) (allowing evidence of settlement discussions used for "another purpose, such as proving a witness's bias or prejudice.").

2. **Response to Defendants' MIL on Defendants' Conduct Outside Investigation Period**

The Court should reject Defendants' request to exclude evidence of its conduct outside the investigation period. Defendants' conduct prior to the Secretary's investigation period – February 6, 2018, through February 5, 2020 – is admissible because it is highly relevant to the issues at the heart of this case. Evidence is relevant, and generally admissible, if it tends to make more or less probable a fact of consequence in determining the action. *See* Fed. R. Evid. 401 (setting forth the test for relevant evidence); 402 (providing that relevant evidence is generally admissible absent a contrary rule).

In this case, the Secretary alleges Defendants violated, *inter alia*, the tipping and minimum wage requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("Act" or "FLSA") by operating an invalid tip pool. If an employer requires customarily tipped employees to participate in a tip pool that includes customarily non-tipped employees, the tip pool is invalid, and the employer must pay its employees the full federal minimum wage. 29 U.S.C. § 203(m); *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 404 (N.D. Ill. 2019). However, if customarily tipped employees voluntarily choose to share tips with customarily non-tipped employees, tip pool is not per se invalid. *See Turner v. Millennium Park Joint Venture, LLC*, 767 F. Supp. 2d 951 (N.D. Ill. 2011) (holding that a tip pool arrangement in which servers paid $3 per day to silverware rollers was valid where servers unanimously voted to hire silverware rollers after discussions with the employer). Thus, a central question to be determined is whether Defendants required servers and baristas to pay a portion of their tips to non-tipped cooks and dishwashers.

The Department of Labor's investigation period does not exist in a vacuum; evidence regarding Defendants' tip pool outside the investigative period will impact the probability of facts key to this central question in light of Defendants' admissions about the duration of the tip

pool. Defendants admit that the tip pool was a "longstanding practice" at Longbranch Café, which was "never changed" over a 15-year period. (Def. Ramseyer Dep. Tr. 52:9-54:2, attached as Ex. 1.) Because Defendants' tip pool practice in place during the investigation period was the same for many years prior, Defendants' conduct concerning the tip pool prior to the investigation period is directly relevant to the operation of the tip pool during the investigation period. It also may be relevant to the issue of whether Defendants failed to notify employees regarding the tip credit prior to their employment.

Moreover, Defendants themselves have put their prior conduct with regard to the tip pool into dispute by claiming the tip pool was voluntary based on actions that occurred before the investigation period. For example, Defendants claim the servers and baristas decided to continue the tip pool practice during discussions at staff meetings "on and off over the years," but could not say whether those meetings occurred during the investigation period. (Def. Ramseyer Dep. Tr. at 63:3-64:2, ECF No. 24-6, PageID #285-86.) It would be fundamentally unfair to allow Defendants to introduce as part of their defense any information about server or barista conduct predating the investigation without affording the Secretary an opportunity to do the same.

Finally, Defendants have made no argument that relevant evidence concerning their conduct before the investigative period is unduly prejudicial. They simply make the bare assertion that such evidence should be excluded, with a citation to an inapplicable evidentiary rule. (*See* Defs.' Mot. in Limine 2, ECF No. 42, PageID#470.) Accordingly, this relevant evidence should be deemed admissible. *See* Fed. R. Evid. 403 (providing that relevant evidence may be excluded if its probative value is substantially outweighed by concerns for prejudice and efficiency).

3.     **Response to Defendants' MIL on Direct or Indirect Reference to "Cult"**

The Court should deny Defendants' request to preclude evidence that "directly or indirectly refers to or mentions either Defendant and/or the Dayemi Community or any of it is [sic] members a cult." The Secretary has never referred to the Defendants or Dayemi Community as a "cult." The fact remains that Defendant Dayemi Organization, Inc. is intertwined with a spiritual community ("Community") run by Din al-Dayemi and Defendant Ramseyer, his spouse. (*See* Sec'y's Reply to Defs.' Resp. to Sec'y's Mot. for Summary J. and evidence cited therein, ECF No. 33, PageID #356.) The Secretary's witnesses may testify regarding how Community dynamics impact the operations and working environment at Longbranch Café; the Community's relationship to its members; witnesses' concern of retaliation from Community members on behalf of Defendants; and the basis for such concern.[1] This evidence is highly probative of several matters of critical importance to this proceeding, *see* Fed. R. Evid. 401 (defining relevant evidence as that which makes a consequential fact more or less probable); 402 (providing that relevant evidence is generally admissible absent a contrary rule), including, but not limited to, bias, credibility, and pressure to comply with the mandatory tip pool.

First, evidence about the Community dynamics' impact on witnesses' employment with Defendants is relevant to the key issue of whether the tip pool was mandatory. *See* Response 2 *infra*. For example, witnesses may testify about how the Community dynamics created a work environment where employees were discouraged or felt intimidated from questioning or speaking out against Defendants' employment policies, including the tip pool policy. Employees' fear of speaking out against the tip pool makes it more likely the tip pool was

---

[1] The Secretary notes that, contrary to Defendants' assertion in their MIL, neither the Secretary's filings nor any witness statements submitted to date have referred to Defendants, the Community, or Community members as a "cult." *See* ECF Nos. 33. The Declaration of Todd Brown, which Defendants specifically reference, does not call the Community a "cult." *See* ECF No. 33-12. Instead, Mr. Brown refers to the group as the "Community" or by its name (Dayemi Tariqat) and describes the group's characteristics and practices based on his perceptions. *Id.*

mandatory, rather than voluntary. *See, e.g.*, *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (finding that tip pools which distribute funds to non-tipped employees must be "free from any coercion whatever and outside any formalized arrangement or as a condition of employment" to be considered valid) (quoting Department of Labor Field Operations Handbook § 30d04(c) (Dec. 9, 1988), (*available at* http://www.dol.gov/whd/FOH/FOH_Ch30.pdf)). Second, evidence concerning Defendants' and the Community's relationship to Community members is relevant to assess the credibility of Defendants' witnesses. For example, Defendants' witnesses may be impeached based on the bias resulting from their involvement in the Community and the Community exerts significant control over its members. "Proof of bias is almost always relevant, as '[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony.'" *United States v. Ozuna*, 674 F.3d 677, 682 (7th Cir. 2012) (quoting *United States v. Abel,* 469 U.S. 45, 51–52 (1984)). "A witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." *Abel*, 469 U.S. at 45–46.

Third, witnesses' concerns of retaliation from Community members on behalf of Defendants and the basis for those concerns are relevant to potential procedural issues, such as any requests for procedural protections for employee witnesses who testify against Defendants.

Defendants have not demonstrated the significant probative value of this evidence is outweighed by its prejudicial impact. Rule 403 creates an exception to Rule 402's general rule that relevant evidence is admissible, whereby a court may such exclude evidence if its probative value is "substantially outweighed" by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The Seventh Circuit has held that evidence of religious

affiliation does not grant a presumption of prejudice and, therefore, should be admissible where relevant. *See United States v. Hoffman*, 806 F.2d 703, 710-11 (7th Cir. 1986) ("The fact that the defendant was a member of . . . a 'religious minority' alone does not give rise to the presumption that jurors of different religious affiliations would treat that defendant differently than they would treat any other defendant."). This is especially true where the district court has cautiously overseen the introduction of such evidence. *See id.* (finding that evidence of a defendant's religious affiliation was more probative than prejudicial where the evidence was relevant and where the trial judge took appropriate precautions to ensure that jurors would not be inappropriately prejudiced during *voir dire*). Defendants' bare assertion that "statement[s] or testimony that directly or indirectly refers to or mentions either Defendant and/or the Dayemi Community or any of it is members as a cult as it would be unduly prejudicial and confusing and may mislead the jury under Fed. R. Evid 403"[2] (Defs.' Mot. in Limine 3, ECF No. 42, PageID#470) is insufficient to demonstrate the evidence should be excluded in the face of its weighty probative value and the case law. Thus, the Secretary's witnesses should be permitted to testify regarding relevant aspects of the Community, any pressure they may have felt to participate in the tip pool, and to use their choice of language to describe the Community.

4.     **Response to Defendants' MIL on Witnesses Not Timely Disclosed Per the Court**

The Secretary does not intend to introduce the testimony of any non-impeachment witness not timely disclosed following a ruling by the Court on the Secretary's pending *Motion for Extension of Deadline to Identify Certain Trial Witnesses in FRCP 26(a)(3) Disclosures*

---

[2] The Secretary notes that, contrary to Defendants' assertion in their MIL, neither the Secretary's filings nor any witness statements submitted to date have referred to Defendants, the Community, or Community members as a "cult." *See* ECF Nos. 33. The Declaration of Todd Brown, which Defendants specifically reference, does not call the Community a "cult." *See* ECF No. 33-12. Instead, Mr. Brown refers to the group as the "Community" or by its name (Dayemi Tariqat) and describes the group's characteristics and practices based on his perceptions. *Id.*

[ECF No. 38]. In that Motion and the supporting Memorandum [ECF No. 38-1], the Secretary asked the Court to grant him until two days after a ruling on his Motion for Summary Judgment or seven days before the start of the trial, which is consistent with disclosure periods found sufficient by other courts. *See Brennan v. Engineered Prods., Inc.*, 506 F.2d 299, 304 (8th Cir. 1974) (finding disclosure of potential employee witnesses 5 to 10 days before trial sufficient where defendant would need names for impeachment); *Perez v. Guardian Roofing LLC*, No. 3:15-CV-05623-RJB, 2016 WL 1408027, at *3 (W.D. Wash. Apr. 11, 2016) (concluding it is "sufficient" for employer to learn employee witnesses' identities as the pretrial conference, "approximately 10 days before trial"). On June 10, 2022, the Secretary submitted his Pretrial Disclosures [ECF No. 45], in which he identified the name and contact information for all potential witnesses except those current or former employees of Defendants subject to his *Motion for Extension of Deadline to Identify Certain Trial Witnesses in FRCP 26(a)(3) Disclosures*.

      The Secretary objects to Defendants' request to exclude untimely disclosed witnesses to the extent it would preclude the Secretary from calling witnesses whose identities have been withheld pending the Court's ruling on his *Motion for Extension of Deadline to Identify Certain Trial Witnesses in FRCP 26(a)(3) Disclosures*. The Secretary also objects to Defendants' request to the extent it would preclude him from calling witnesses to testify for impeachment purposes only, as such evidence need not be disclosed under Rule 26(a)(3) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(3)(A) (directing disclosure of "evidence [a party] may present at trial *other than solely for impeachment*." (emphasis added)).

**5.       Response to Defendants' MIL on Evidence on Emotional Distress Damages**

The Secretary has never sought emotional distress damages and does not intend to introduce any evidence to establish such damages. (*See* Sec'y's Complaint, ECF No. 1, PageID#6 (seeking back wages, liquidated damages, injunctive relief, costs, and any other appropriate relief).)

The Secretary notes Defendants' request is worded extremely broadly in asking the Court to exclude "any matters related to alleged emotional distress damages." (*See* Defs.' Mot. in Limine 5, ECF No. 42, PageID#471.) To the extent this request could be construed as prohibiting the Secretary from producing any evidence relevant to the claims or defenses at issue or the relief sought by the Secretary, the Court should deny the request.

6.     **Response to Defendants' MIL on Probable Testimony of Non-Witnesses**

The Secretary does not intend to introduce evidence regarding the probable testimony of a witness who is absent and/or not called to testify, except to the extent needed for impeachment purposes and as permitted by any hearsay exception or exemption. Defendants' bare assertion that such evidence would be irrelevant and more prejudicial than probative provides no basis for the Court to exclude relevant, admissible evidence regarding statements of absent and/or non-witness declarants.

7.     **Response to Defendants' MIL on Financial Status of Longbranch Café Outside 2020**

The Court should reject Defendants' request to exclude evidence regarding the financial status or income of Longbranch Café for any year other than 2020. Such evidence is relevant and, indeed, necessary for a determination on presently unresolved disputes. Evidence is relevant, and generally admissible, if it tends to make more or less probable a fact of consequence in determining the action. *See* Fed. R. Evid. 401 (setting forth the test for relevant evidence); 402 (providing that relevant evidence is generally admissible absent a contrary rule).

Evidence concerning Longbranch Café's finances during each year of the investigation period – 2018, 2019, and the first quarter of 2020 – is relevant to a determination of whether Defendant Dayemi Organization, Inc. d/b/a Longbranch Café & Bakery meets the definition of a covered employer under § 3(s) of the Act.

The FLSA covers employers who have an annual gross dollar volume of sales ("ADV") of $500,000 or more. 29 U.S.C. § 203(s)(1)(A). ADV is calculated either by the employer's earnings during a tax year or, where there is doubt on whether an employer has the requisite ADV for a particular period, the employer's earnings during the twelve months preceding the beginning of a given fiscal year. 29 C.F.R. § 779.266; *Rivera v. Heights Landscaping, Inc.*, No. 03 C 6428, 2004 WL 434214, at *2 (N.D. Ill. Mar. 5, 2004). Under the latter method, referred to as the "rolling quarters" analysis, the ADV threshold is met for a particular quarter if the employer's gross sales for the 12-month period immediately preceding that quarter total $500,000 or more. 29 C.F.R. § 799.266(b).

As an initial matter, because the issue of coverage for 2018 and 2019 has not yet been definitely determined, the Secretary may need to provide evidence of Longbranch Café's financial position in 2018 and 2019 to establish it met the ADV requirements for coverage for those years. Although Defendants state they only challenge coverage for 2020, the parties have not yet entered into binding stipulations regarding coverage for 2018 and 2019, nor has the Court issued a ruling that Longbranch Café met the coverage requirements for those years. Accordingly, the Secretary should not be foreclosed from proffering evidence for that purpose.

Moreover, evidence concerning Longbranch Café's financial position in 2019 is also relevant to determining coverage in the first quarter of 2020, which Defendants dispute. Under the rolling quarters analysis, Defendants' ADV for the first quarter of 2020 is determined based

on its gross sales during the immediately preceding 12-month period. The 12-month period immediately preceding the first quarter of 2020 is composed of all four quarters of calendar year 2019. (*See* Decl. of Lindsey Corona ¶ 17a, ECF No. 23-1, PageID#110.) Thus, it is necessary to consider evidence of Defendants' gross sales in 2019 to determine whether coverage is met for the first quarter of 2020 under the rolling quarters analysis. Given the significant probative value of Longbranch Café's 2019 finances to the disputed issue of coverage during the first quarter of 2020, Defendants' bare assertion that this probative value is outweighed by the evidence's prejudicial effect is unpersuasive.

8. **Response to Defendants' MIL on Evidence Not Timely Provided in Response to Defendants' Discovery Requests**

This Court should deny Defendants' request to exclude "[a]ny witness or document not timely identified and/or produced by Plaintiff in response to Defendants' discovery requests." (Defs.' Mot. in Limine 8, ECF No. 42, PageID #471.) As an initial matter, the Secretary notes that Defendants' discovery requests are limited in that they do not request all documents or information they Secretary may seek to introduce at the trial. To the extent the Secretary seeks to introduce witness testimony or documents that are not responsive to Defendants' discovery requests, he should not be precluded from doing so. The fact that Defendants failed to seek discovery on certain subjects or documents should not preclude the Secretary from introducing relevant evidence outside Defendants' discovery requests. Any "unfair surprise" that would result is solely the fault of Defendants for not drafting sufficiently encompassing discovery requests. Moreover, the Secretary should not be precluded from introducing witness testimony or documents identified in the Secretary's discovery disclosures, including his *Pretrial Disclosures*, or testimony of witnesses whose identities will be disclosed pursuant to a ruling from the Court

on the Secretary's *Motion for Extension of Deadline to Identify Certain Trial Witnesses in FRCP 26(a)(3) Disclosures*.

**9. Response to Defendants' MIL on Evidence of Refusals to Enter into Stipulations**

The Secretary does not presently intend to introduce evidence of the Defendants' refusal to enter any stipulation, but the Court should not preclude the Secretary from offering such evidence, if needed, at this stage. While Defendants generally argue such evidence is irrelevant or overly prejudicial, the Court cannot make a determination as to relevance until the Secretary identifies any specific evidence and the purpose for which it is being offered. As such, the Court should deny Defendants' MIL to exclude evidence of refusals to enter into stipulations as premature and make any rulings based on the specific evidence offered.

**10. Response to Defendants' MIL on Lay Opinion on FLSA Violations**

The Court should deny Defendants' request to prohibit lay witnesses from opining on whether Defendants' pay practices violated the FLSA to the extent that the opinion testimony is permitted by Rule 701 of the Federal Rules of Evidence. Rule 701 provides that a lay witness may offer opinion testimony that is (a) rationally based on the witnesses' perception; (b) helpful to clearly understanding their testimony or determining a disputed fact; and (c) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. If any of the Secretary's lay witnesses testify regarding an opinion that Defendants violated the FLSA, their testimony will meet the parameters set forth in Rule 701.

The Secretary expects to offer the testimony of Wage and Hour Investigator ("WHI") Lindsey Corona, who conducted the compliance investigation of Defendants and will testify, *inter alia*, about her calculations of back wages Defendants owe their employees. To establish the basis for her calculations, WHI Corona may be required to explain the findings of her

investigation (i.e. that the Wage and Hour Division found Defendants violated the FLSA as a result of her investigation). Such testimony meets the Rule 701 criteria because it: (a) is based on her document review and witness interview statements[3] during the investigation, (b) explains her methodology for calculating back wages and the propriety of such calculations, and (c) is not predicated on scientific, technical, or similar knowledge. Thus, WHI Corona should be permitted to testify about her investigative findings.

Additionally, the Secretary may offer the testimony of former employees of Defendants regarding their communications with Longbranch Café management concerning the tip pool, including statements to management that the tip pool was unlawful. Employees' communications with Longbranch managers and other employees regarding the illegality of the tip pool is directly relevant to the question of whether participation in the tip pool was mandatory and whether Defendants can meet their burden of showing reasonable, good faith compliance efforts to defend against mandatory liquidated damages. Testimony regarding such communications meets Rule 701 because it: (a) is based on the witnesses' perception of those communications, (b) helps the Court and jury's understanding of key questions in the case, and (c) is not predicated on scientific, technical, or similar knowledge. Thus, employee witnesses should be permitted to testify about such conversations.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

CHRISTINE Z. HERI
Regional Solicitor

---

[3] Such statements would not be hearsay pursuant to Federal Rule of Evidence 801(d)(2)(D). *See, e.g.*, *Scalia v. Hibachi Seafood Buffet H&Z, Inc.*, 2020 WL 1248338, at *2 n.1 (N.D. Ill. Mar. 16, 2020).

*[signature: Elisabeth Nolte]*
**ELISABETH NOLTE**
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
230 South Dearborn Street, Rm. 844
Chicago, Illinois 60604
312-353-7837
Nolte.Elisabeth.P@dol.gov
IL Bar No. 63221218

*Attorneys for Plaintiff Martin J. Walsh,*
*Secretary of Labor, United States Department*
*of Labor*

## **CERTIFICATE OF SERVICE**

I certify that on June 22, 2022, the **Secretary of Labor's Responses to Defendants' Motion in Limine** was electronically filed using the CM/ECF System and served by email on the following:

>Shari R. Rhode, Esq.
>Rhode Law Firm
>1405 West Main Street
>Carbondale, IL 62901
>shari@rhodelawfirm.com

>*/s/ Elisabeth Nolte*
>**ELISABETH NOLTE**
>Attorney

>United States Department of Labor,
>One of the Attorneys for Martin J. Walsh,
>Secretary of Labor