IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARTIN J. WALSH, Secretary of Labor,** United States Department of Labor, | ) ) ) |
| **Plaintiff,** | ) ) ) Case No. 21-cv-56-SMY |
| vs. | ) ) |
| **DAYEMI ORGANIZATION, INC. d/b/a LONGBRANCH CAFÉ AND BAKERY,** an Illinois Corporation, and **ELAINE RAMSEYER GREENBERG,** an Individual, | ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Martin J. Walsh, Secretary of Labor, U.S. Department of Labor (the "Secretary") filed suit on behalf of 31 current and former employees against Defendants Dayemi Organization, Inc. d/b/a Longbranch Café and Bakery and Elaine Ramseyer Greenberg ("Longbranch"), alleging violations of the Fair Labor Standards Act, as amended 29 U.S.C. § 201 *et seq* ("FLSA"). Following a trial, the jury reached a verdict in favor of the Secretary and awarded back wages in the amount of $4,920.02.

Now before the Court is the Secretary's Motion to Alter Judgment or, in the Alternative, Motion for New Trial (Doc. 77), which Longbranch opposes (Doc. 82). For the following reasons, the motion is **GRANTED**.

### Factual Background

The pertinent evidence presented at trial is summarized as follows: Longbranch paid servers and baristas working at the Café $5.00 or $5.50 per hour. Because Longbranch paid servers

less than the federal minimum wage, it took a tip credit to meet minimum wage obligations to servers and baristas.

Longbranch operated a tip pool at the Café, which had been in place for at least 15 years before the Department of Labor's investigation. Servers and baristas placed all tips received during a shift into a tip jar. At the end of each shift, money from the tip jar was distributed to employees who worked that shift as follows: 90% divided between the servers and baristas on that shift, 5% to the cook(s), and 5% to the dishwasher. Cooks and dishwashers worked in the kitchen at the Café and were not customarily or regularly tipped employees. Several current and former employees, including Jennifer McSparin, Lindsay Capelli, Olivia Zambetta, Cierra Goolsby, Lana Frutoz, Andrew Guyton, Jennifer Haselhorst, Quinton McBride, Lilly Dunkel, Wilbur Davis, and Defendant Greenburg, testified regarding their employment at Longbranch, the tip pool policies, and whether they believed the tip pool was voluntary or involuntary.

Lindsey Corona, an Investigator for the Wage and Labor Division of the U.S. Department of Labor, testified about her role in the investigation and her calculation of damages. Based on Longbranch payroll records from February 2018 to February 2020, Corona calculated $49,200.23 in back wages due to the 31 servers and baristas. She calculated the back wages for each server by (1) determining the amount of tip credit Longbranch took from February 2018 to February 2020 (by subtracting the amounts Defendants paid from the federal minimum wage of $7.25) and (2) multiplying that amount of the tip credit by the number of hours worked. The back wage calculations represented only the unpaid tip credit for each hour worked by the servers and baristas based only on the amounts paid and hours worked as identified in Longbranch's payroll records.

The jury was instructed that if the tip pool was invalid, Longbranch owed the difference between the hourly wage paid and the federal minimum wage of $7.25. In reaching its verdict, the

jury specifically found that (1) Longbranch required the tipped employees (servers and baristas) at the Café to participate in a tip pool including non-tipped employees (cooks and dishwashers); (2) Defendant Ramseyer required the tipped employees (servers and baristas) at the Café to participate in a tip poll including non-tipped employees (cooks and dishwashers); and (3) Longbranch and Defendant Ramseyer failed to pay their employees the minimum wage required by law. The jury then awarded back wages in the amount of $4,920.22.

## Discussion

Under Rule 59(e), the Court may alter or amend its judgment if the movant clearly establishes that there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citing *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013)). The decision of whether to grant or deny a motion brought under Rule 59(e) "is entrusted to the sound judgment of the district court..." *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996).

A motion for new trial under Rule 59(a) will only be granted if "the verdict is against the weight of the evidence ... the damages are excessive, or ... for other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson,* 390 F.3d 525, 530 (7th Cir. 2004). A court may order a new trial limited to the issue of damages where a jury verdict is incontrovertible on the issue of liability but against the weight of the evidence on the issue of damages. *See, e.g, Rosario v. Livaditiz,* 963 F.2d 1013 (1992), *cert. denied,* 106 U.S. 1051 (1993).

While the Seventh Amendment to the United States Constitution generally bars a court from increasing a jury's damages award, an exception applies when, as is true here, the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages. *See*, *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935); *see Roman v. Western Mfg., Inc.* 691 F.3d 686,

702 (5th Cir. 2012); *Liriano v. Hobart Corp.*, 170 F.3d 264, 273 (2nd Cir. 1999) (collecting cases); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244, 1252–53 (11th Cir. 1997) (correcting a jury's calculation of the back pay owed to plaintiff where once liability was found there was no issue as to the amount of damages).  Thus, the court may bypass a new trial on damages by amending a jury's verdict with respect to damages where a new trial on damages would be "a useless formality" that would serve "no purpose." *Massey Yardley*, 117 F.3d at 1252; *see also*, *LaSalle Nat. Bank v. Massachusetts Bay Ins. Co.,* 1997 WL 619856, at *5 (N.D. Ill. Sept. 30, 1997).

In this case, the jury found Longbranch required the tipped employees to participate in a tip pool including non-tipped employees (cooks and dishwashers) and that it failed to pay its employees the minimum wage required by law.  The parties stipulated that Longbranch paid servers and baristas working at the Café $5.00 or $5.55 per hour.  Lindsey Corona testified that she computed back wages for each server and barista by: (1) determining the amount of tip credit Longbranch took from February 2018 to February 2020 and (2) multiplying that amount of the tip credit by the number of hours worked.  She further testified that Longbranch took a tip credit of $2.25 from February 6, 2018 through December 31, 2019 and a tip credit of $1.70 from January 1, 2020, through February 5, 2020.  The amounts paid by Longbranch and the number of hours worked by the servers and baristas were undisputed and were derived from Longbranch's year-to-date payroll records for February 2018 to February 2020.  Based on the payroll records, the total amount of back wages due to the 31 servers and baristas during the relevant period was $49,200.23.  This amount was uncontroverted at trial.  As such, the jury's back wage award in the amount of $4,920.22 constitutes manifest error.  And the Court finds as a matter of law that the servers and baristas are entitled to back wages in the amount of $49,200.23.

## Conclusion

For the foregoing reasons, the Secretary of Labor's Motion to Alter Judgment or, in the Alternative, For New Trial Only on the Issue of Damages (Doc. 77) is **GRANTED**. Judgment will be entered in favor of Plaintiff in the amount of $49,200.23.

**IT IS SO ORDERED.**

**DATED:  January 13, 2023**

**STACI M. YANDLE**
**United States District Judge**